# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **HOSAM SMADI, # 39482-177,** | ) |
| **Petitioner,** | ) ) ) |
| vs. | ) ) Case No. 3:18-cv-01462-DWD |
| **D. SPROUL,** **Warden, USP Marion,** | ) ) ) ) |
| **Respondent.** | ) ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Petitioner Hosam Smadi is a federal inmate incarcerated at the USP-Marion. He filed this habeas corpus action pursuant to 28 U.S.C. § 2241 to challenge the loss of 27 days of good conduct credit against his sentence, imposed as a disciplinary sanction. (Doc. 1). Respondent filed a Response to the Petition (Doc. 10), and Smadi replied (Doc. 13). For the following reasons, the Petition is **DENIED**.

## Relevant Facts and Procedural History

Smadi is serving a 24-year sentence imposed in the District Court of the Northern District of Texas for attempted use of a weapon of mass destruction. *United States v. Smadi*, Case No. 09-cr-294-M-1 (N.D. Tex., Doc. 88). At the time of the Government's Response, Smadi's projected release date was January 11, 2031.[1] (Doc. 10, p. 2). Smadi asserts that he suffers from severe mental illnesses, including schizophrenia. (Doc. 1, pp. 1-2).

The disciplinary sanction Smadi challenges is based on the following statement Smadi

---

[1] According to the Bureau of Prisons website, Smadi's current projected release date is April 19, 2031. https://www.bop.gov/inmateloc/ (last visited October 6, 2020).

1

made on March 23, 2015, in a louder than normal conversational tone with other inmates in close proximity: "911, Seven, Seven (repeated four additional times). That is the best number in the world. In the whole history of the world. 911, Seven Seven. Three thousand sheep. Three thousand sheep were barbecued and burned." (Doc. 1, p. 2; Doc. 10, p. 2).

On April 7, 2015, an officer reviewing audio/video footage of the incident charged Smadi with conduct disruptive to the orderly running of the institution, most like Encouraging a Group Demonstration (Prohibited Act Code 299, most like Prohibited Act Code 212)[2] in Incident Report 2702734. (Doc. 1, pp. 2-3; Doc. 10, pp. 2-3). On April 30, 2015, the Disciplinary Hearing Officer (DHO) held a hearing at which Smadi declined a staff representative. Smadi was found guilty and 27 days of his earned good conduct time was revoked. (Doc. 1, p. 3).

## Discussion

Federal prisoners can challenge the loss of good conduct credit through a petition for habeas relief pursuant to 28 U.S.C. § 2241, *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983), thus Smadi's claim is properly before the Court. However, it is well settled that before the Court can consider such a claim, the federal prisoner must first exhaust administrative remedies. *Id.* at 949; *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997).

The exhaustion requirement is not statutorily mandated, therefore it is not a jurisdictional requirement and this Court can still reach the merits of Smadi's petition. *Id.*; *Jackson*, 707 F.2d at 949. Courts impose exhaustion requirements to protect agency authority and to promote judicial efficiency. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1017 (7th Cir. 2004). Exceptions may be made to the exhaustion requirement, but "sound judicial discretion" governs. *Id.* at 1016. No basis for an exception is apparent here.

---

[2] Prohibited Act 299 is "Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons." 28 C.F.R. § 541.3 (Table 1).

The Bureau of Prisons (BOP) administrative remedy procedure allows an inmate to seek formal review of a complaint relating to any aspect of his confinement.  *See* 28 C.F.R. § 542.10 *et seq*.  For an appeal of a DHO decision, the appeal is sent directly to the Regional Office.  28 C.F.R. §542.14(d)(2).  If the inmate is unhappy with the Regional response, he may file a final appeal with the Central Office in Washington, D.C.  28 C.F.R. § 542.15(a).  An inmate may not raise on appeal issues not raised at lower levels.  *See* 28 C.F.R. § 542.15(b)(2).  In this case, Smadi filed timely appeals in both the Regional and Central Office, in compliance with the administrative remedy procedures established by the BOP. (Doc. 10, p. 6).  However, in those appeals, Smadi failed to present the evidentiary, constitutional, or competence arguments he now advances and therefore did not exhaust them.

Smadi did not contest the charges against him in the DHO hearing of April 30, 2015.  He admitted to making the statement in front of another inmate, and raised only the defense that the incident report was written and delivered to him too late.  (Doc. 10-1, p. 13)*.*  Moreover, Smadi did not present the claims now before the Court in his appeal to the Regional and Central Office. At the Regional level, Smadi only claimed that he did not receive his incident report within twenty-four hours. (Doc. 10-2, p. 104).  In his final appeal to the Central Office, Smadi raised the delayed delivery of the incident report, as well as claims that he was selectively prosecuted by the BOP, and that corruption is widespread in the BOP.  (Doc. 10-2, p. 109).  In none of these appeal processes did Smadi contest the evidence against him, assert that his First Amendment rights had been violated, or claim mental incompetence; instead, he raises these issues for the first time here.  (Doc. 1, p. 4).

Smadi could have raised these claims during his disciplinary proceedings and administrative appeals.  He offers no explanation of why he waited to raise the matters until he

filed the instant Petition. Thus, Smadi failed to exhaust his administrative remedies, which waives the claims he now presents to this Court.

Even if Smadi's administrative appeals are liberally construed to include the claims he raises in this habeas case, the claims are without merit. In the instant Petition, Smadi introduces three claims: insufficiency of the evidence; violation of his First Amendment rights; and his alleged mental incompetence at the time of the incident. (Doc. 1, p. 4).

As to the evidentiary issue, while inmates retain due process rights in connection with prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The findings of the DHO must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445 (1985); *see also Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). The "some evidence" standard is a low bar, which the Seventh Circuit has described as a "meager threshold." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends"). The Court does not reweigh the evidence or determine credibility. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Nor does the Court "assess the comparative weight of the evidence underlying the disciplinary board's decision." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Instead, the "relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id.* (quoting *Hill*, 472 U.S. at 455-56 (emphasis in original)). The evidence need not be sufficient to logically exclude any result except the one reached by the prison decision maker. *Viens v. Daniels*, 871 F.2d 1328, 1334-35 (7th Cir. 1989); *see also Hill*, 472 U.S. at 457. As such, this Court can overturn the decision "only if no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented." *Henderson*, 13 F.3d at

4

1077. Only evidence that was presented to the hearing officer is relevant to the determination of whether there was "some evidence." *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992).

In the DHO hearing, Smadi did not deny making the statement with another inmate present, but he explained that he was speaking to three correctional officers. (Doc. 10-1, p. 13). The DHO acknowledged Smadi's explanation and noted that both Smadi and his witness confirmed that Smadi made the statement with at least one other inmate present, who became upset by Smadi's comments. (Doc. 10-1, p. 13). This is enough to constitute "some evidence" to support the finding of guilt.

Smadi claims the disciplinary action violated his First Amendment rights because Prohibited Act Code 299, most like Prohibited Act Code 212, "serves no legitimate penological interest" since Smadi is a "harmless lunatic." (Doc. 1, p. 6).[3] However, "[lawful] incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977) (citing *Price v. Johnston*, 334 U.S. 266, 285 (1948)). Inmates' speech rights are limited to accommodate the needs and objectives of prisons. *Sandin v. Conner*, 515 U.S. 472, 481-485 (1995). "[Such] considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Jones*, 433 U.S. at 128 (citing *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).

In this case, Prohibited Act Code 299, most like Prohibited Act Code 212, serves the

---

[3] Smadi claims to have delusions, and states on the day of the incident, he had asked for psychological help because he had become fearful of his socks, and he was "standing around saying strange things to imaginary people." (Doc. 1, p. 6).

5

legitimate penological purpose of maintaining order in the institution.  (Doc. 10-1, p. 14).  According to the judgment of prison officials, Smadi's comments were disruptive.  (Doc. 10-1, pp. 13-14).  In addition, Smadi himself admits that this is true; another inmate heard his comments and became upset.  (Doc. 10-1, p. 13).  Considering that Smadi's speech rights are limited to accommodate the needs of a prison environment, Smadi's First Amendment rights were not violated by the enforcement of the cited Prohibited Act Codes.

Finally, Smadi asserts that he was mentally incompetent when the incident occurred.  (Doc. 1, p. 4).  Respondent notes that the evidence before the DHO, which included a psychological evaluation conducted on April 15, 2015, was sufficient to establish that Smadi was competent at the time of the incident and during the disciplinary proceedings.  (Doc. 10, p. 12).

Under the applicable BOP regulations, inmates "will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, you were unable to appreciate the nature and quality, or wrongfulness of the act."  28 C.F.R. § 541.6(b).  Moreover, "The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff."  *Id.*  And, as noted above, the Court's determination of whether there was "some evidence" supporting the disciplinary decision may only consider evidence that was presented to the hearing officer.  *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992).  The records indicate that there was sufficient evidence to establish that Smadi was competent when the incident occurred and could appreciate the consequences of his conduct.  On April 15, 2015, a psychiatric evaluation of Smadi determined, "at no time during any contacts with Psychology Services staff at FCC Terre Haute has inmate Smadi been opined to be out of control of his behavior or thinking."  (Doc. 10-1, p. 22).  Additionally, Smadi presented no evidence regarding his mental illness to the DHO.  (Doc. 10-1, p. 13).  Ultimately, this constitutes "some evidence" which the DHO reasonably relied

upon to conclude that Smadi was competent during the time of the incident.

On the merits, the Court cannot say that the disciplinary decision to revoke Smadi's good conduct credits lacked evidentiary support, violated his First Amendment rights, or that he was mentally incompetent when the incident occurred.

## Disposition

Hosam Smadi's Petition for habeas relief under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**; all pending motions are **DENIED AS MOOT**; and this case is **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to close this case and enter judgment accordingly.

It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his § 2241 Petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000). If Petitioner wishes to appeal, he may file a notice of appeal with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(B). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

A motion for leave to appeal *in forma pauperis* ("IFP") must identify the issues Petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181

F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS SO ORDERED.**

**DATED:**  October 6, 2020

_____
DAVID W. DUGAN
United States District Judge